Mr. Justice FIELD,
with whom concurred Mr. Justice CLIFFORD, dissenting.
I am compelled to dissent from the judgment of the court in this case.
*350 I agree with the majority that as the decree of confiscation, under which the defendant asserts title to the demanded premises, comes before us collaterally, it cannot be attacked for mere errors or irregularities committed in the progress of the cause in which it was rendered. It can be only attacked for defects which go to the jurisdiction of the court, either over the subject-matter or the parties, or to render the particular decree. It is not strictly correct to say that, if the jurisdiction over the subject-matter and the parties exists in a particular case, any defect in the decree rendered can only be taken advantage of on appeal or by direct proceedings. That jurisdiction may exist and yet the decree may be so variant from that which the court was authorized to pronounce as to be void on its face. If the law, for example, authorize a pecuniary fine, the court cannot award imprisonment. If the law directs only damages to be assessed, the court cannot decree a specific performance. If the law declares that only a life estate shall be confiscated, the court cannot disregard its limitation and condemn the fee. The judgments in such cases would be void in whole or part, notwithstanding complete jurisdiction was had over the subject and the parties in controversy. There are certain limitations to the action of courts even after they have acquired jurisdiction which they cannot transcend without opening their judgments to collateral attack. In other words, jurisdiction over the subject-matter and parties does not authorize a judgment in the case of any and every kind.
All reasonable presumptions are indulged in support of judgments when collaterally attacked. So large are these presumptions that they generally answer as an explanation /or the absence of all matters in the record, which are required to be taken before the judgment can be lawfully entered. As the presumptions are indulged to supply the absence of averments of the particular facts presumed, they cease to be received when the contrary of the particular supposed facts appears. Thus when a record of a judgment, rendered in an action at law upon an issue joined between *351 the parties, is produced, in which no verdict of a jmy or finding of the court appears, upon the existence of which alone the judgment could .be entered, it will be presumed that such verdict or finding was had. But, on the other hand, if it affirmatively appear in the record that no such proceeding was had, the judgment may be attacked as having' been rendered without authority. It is of no avail, then, to invoke the doctrine that a judgment cannot be collaterally assailed. The doctrine does not apply to a case of this kind, for the record itself establishes the invalidity of the judgment produced.
The objections which I make to the decree, upon which the defendant asserts title, go to the jurisdiction of the court over the property condemned, to its jurisdiction to enter the decree rendered, and to the validity of the act of July 17th, 1862. Similar objections were taken by me in a dissenting opinion to the decree in the case of Miller v. United States, recently decided, but the importance I attach to them justifies their further elucidation.
First; as to the jurisdiction of the court over the property. The executive seizure of the property required by the act of Congress is preliminary to the commencement of judicial 'proceedings for its forfeiture. “After the same shall have been seized,” says the statute, proceedings shall be instituted. Now, when the executive seizure in this case was made, what was the condition of the property before judicial proceedings were taken ? Was it in the custody of the court? Clearly not. As yet the coux’t had nothing to do with it — no more than, before suit, it has to do with a vessel seized by the collector for a violation of the revenue laws, or brought into port by a prize crew for an attempted breach of blockade. The fact that the marshal was employed as the agent of the President in making the seizure, did not change the position of- the property. The" President might have selected any other person as his agent with the same result. He might, at this stage, have released the propei'ty from seizux'e upon his own volition, without interfering with the authority of, or coming in collision with the court. As yet *352 no relations were established between the court and the property seized. Whatever the marshal, in making the preliminary seizure, may have said to the occupants of the premises seized, or whatever notice he may have given to them, whether it was that he held the property subject to the directions of the President, or to the order of the District Court or district attorney, in no wise affected the condition of the. property, or created any relation between it and tiie court. The existence of any such relation did not depend upon the declaration of that officer, who,-as yet, was not acting under any judicial process.
The next proceeding was the filing of the libel of information ; but that did not change the relation between the court and the property. The libel ivas the foundation for the issue of the process of the court to bring the property within its custody; but, of itself, without such process, it worked no change in the condition of things. When was it ever pretended that the mere filing of a libel, without the issue of process, brought person or thing into the custody of the court? When the libel was filed process was ordered, and process was issued, commanding the marshal to attach the property and detain the same in his custody... By .attachment under this judicial process, had. it been made, the court would have acquired jurisdiction over the property, for it is by seizure under judicial process, and that alone, that the court takes the res into its custody. But the process thus issued was never served, and the jurisdiction of the court over the property rested upon the preliminary seizure alone. And yet we are told by the majority of the court that the objection that this preliminary seizure was insufficient to give the requisite jurisdiction, and that a new seizure, under judicial process, was necessary, is a very narrow and unsubstantial objection. I answer, that no objection is narrow or unsubstantial which goes to the jurisdiction of the court to forfeit the property of a citizen upon ex parte proceedings, without á hearing, for alleged public offences of which he is assumed to be guiltjq because he did not appear to a citation, which the law prohibited from being commu *353 nicated to him. This court has'repeatedly dismissed writs of error because tested by a wrong officer, or made returnable on a day other than the first day of the term, or because they did not embrace all the parties to the record; and when it has been urged that the objections taken to them were extremely narrow and unsubstantial, the answer has been that nothing could be treated as narrow and unsubstantial, and for that reason disregarded, which was prescribed by law as the mode of exercising the appellate jurisdiction of the court. So, here, nothing can justly be considered as ' either narrow or unsubstantial which is required by law to give jurisdiction to a court to enforce penal statutes, in the absence of the alleged offenders against their1 provisions. .
Second; as to the jurisdiction of the court to render the-decree in the confiscation case. The act of Congress, as already stated, is highly penal in its consequences, and by all established canons of interpretation should be strictly construed.* Its every requirement should be rigidly exacted. What, then, are its requirements ? It declares that the proceedings instituted for the condemnation of the property seized shall conform as nearly as maybe to proceedings-in admiralty or revenue cases, and if the property shall be found to have belonged to a person engaged in the rebellion, or who has given aid and comfort thereto, the same shall be-condemned.
As the proceedings in the case upon which the defendant1 relies related to land, they should have conformed, according-to those provisions, as nearly as practicable to proceedings-in revenue cases. Now the statute of 1799 prescribes the-proceedings in these cases, and declares that after default is-made in one of them, “ the court shall proceed to hear and determine the cause according to law,” a clause which has-been judicially held, and in my opinion correctly held, to make it imperative upon the court that there shall be some hearing before a decree of forfeiture is rendered, and “ the *354 court will require,” says Mr. Justice Sprague, in such cases, “ the prosecutor to introduce full proof of the allegations in' the libel whenever the circumstances shall make it reasonable.”*
If we consider the provision of the law of 1799, and the provision of the act of 1862, for a finding, it seems impossible to escape the conclusion, that a finding upon hearing is an essential prerequisite to any decree of forfeiture in these confiscation cases. The authority to render the decree is'in express terms made conditional upon a particular fact being found. If the fact designated be found, says the statute, the' property shall be condemned, which is equivalent to declaring that if such fact be not found, no condemnation shall be decreed. As the record produced in the case, upon which the defendant relies, shows that no hearing was had and no finding was made, the decree of forfeiture rendered therein appears to me to be an act of judicial usurpation.
Third; as to the validity of the clauses of the act of 1862, providing for the seizure and confiscation of the property of rebels. This point I have already considered at length in the dissenting opinion in Miller v. United States, and I shall only add a few words.. In that dissenting opinion I expressly stated that it had been held that, when the late rebellion assumed the proportions of a territorial civil war, the inhabitants of the Confederate States and the inhabitants of the loyal States became reciprocally enemies to each other, and that the inhabitants of the Confederate States engaged in the rebellion, or giving aid and comfort thereto, were at the same time amenable to the municipal law as rebels, and that the correctness of this determination was not disputed; that the' question was, not as to -.the right of Congress to adopt either of these courses, but what course had Congress, by its legislation, authorized. It is indisputable, that whatever Congress may authorize to be done, by the law of nations, in the prosecution of war against an independent nation, it may authorize to be done when engaged in the prosecution *355 of a territorial civil war against the domestic enemies of the United States. I contend only that the limitations, which the law of nations has imposed in the conduct of war between independent nations, should apply and govern the United States in whatever war they may prosecute. I do not doubt, and never have doubted for a moment, that the United States possess all the power necessary to suppress all insurrections, however formidable, and to make their authority respected and obeyed throughout the limits of the republic. But this recognition of the power of the government cannot be permitted to preclude a ¿omparison of all legislation, adopted ¡to uphold its authority, with the Constitution. And in so comparing the act of July 17th, 1862, I am unable to find in that great instrument any sanction for the clauses in the act providing for the seizure and confiscation of the property of persons charged with particular criminal acts. I do not find it in the war powers of the government, for they sanction only the confiscation of the property of public enemies. I do not find it in the municipal power of the government to legislate for the punishment of crimes, for that is subject to limitations, which secure to the accused a trial by a jury ¡of his peers, and the right to be confronted with the witnesses against him.
It is true, as already stated, that, enemies participating in the rebellion, or giving aid and comfort thereto, might have been treated as rebels and held amenable to the municipal law. Yet the terms, enemies and rebels, are not synonymous, even though the rebellion attained the proportions of a territorial civil war. A permanent resident of the Confederacy was an enemy, although he may always have opposed the rebellion and remained loyal in his feeling and action to the National government. His position as an enemy was determined by his residence,'and had nothing to do with his personal disposition or conduct. But he was not a rebel, and could not have been prosecuted as such unless he was personally guilty of treasonable acts.
Congress well understood the distinction between enemies and rebels, and we are not justified in supposing that it in *356 tended to disregard this distinction in its legislation, even •were that practicable, as it was not.
My conclusion is that the judgment of the court below was erroneous, and should be reversed.

 1 Kent’s Commentaries, 376.

 United States v. Schooner Lion, 1 Sprague, 400.